**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**UNITED STATES OF AMERICA,**

               **Plaintiff,**             **CASE NUMBER:04-73862**
                                         **HONORABLE VICTORIA A. ROBERTS**

**v.**

**JOSEPH CSOTTY, PRESIDENT OF PROFESSIONAL**
**PSYCHOLOGICAL SERVICES, INC,**

**JOSEPH CSOTTY, AGENT FOR**
**PETITUM S.A.,**

**JOSEPH CSOTTY, PRESIDENT OF**
**PERFORMANCE FIRST MARKETING, INC.,**

**JOSEPH CSOTTY, AGENT FOR AN DARK**
**TRADING TRUST,**

               **Defendant.**
_____/

**ORDER**

**I.    INTRODUCTION**

    This matter is before the Court on Defendant Joseph Csotty's Motion for

Reconsideration.  For the following reasons, the Court **DENIES** Defendant's motion.

**II.    BACKGROUND**

    Defendant Joseph Csotty, President of Professional Psychological Services, Inc.,

Agent for Petitum, S.A., President of Performance First Marketing, Inc., and Agent for

AndArk Trading Trust ("Defendant") seeks reconsideration of this Court's order granting

petitions to enforce Internal Revenue Service ("IRS") summonses and orders to show

1

cause.  The IRS issued five summonses to Defendant as an agent or officer of the

these entities he is involved with.  After a show cause hearing on December 16, 2004,

the Court granted the IRS summons and ordered Defendant to provide records to the

IRS.

In his motion for reconsideration, Defendant argues that he should not have to

comply with the summonses because the IRS is improperly conducting a criminal

investigation under the guise of a civil audit.  Defendant recites various facts which have

become known to the IRS, which Defendant contends should lead the IRS to believe

that he has committed fraud.  Defendant states that in 1991, he became involved with

"Anderson Ark" a tax scheme conspiracy, which involved laundering illegal proceeds out

of the United States via offshore trusts.  *See United States v. Castellini*, 392 F.2d 35, 39

(1st Cir. 2004), *see also United States v. Wayne Anderson*, 391 F.3d 970 (4th Cir.

2004).  Defendant admits that "somewhat less than coincidentally,[he] utilized the same

accountant for tax preparation who was used by the Anderson [Ark principals], and

made used of one or more of the same entities . . . which were vehicles of the same tax

fraud/money laundering for which the Anderson [Ark principals] were indicted."[1] Def. Br.

at 8.

In 1998, the IRS referred Defendant for a criminal investigation for tax periods

---

[1]The Accountant is identified as a co-conspirator in the Anderson Ark "money
laundering schemes to move the proceeds of illegal activity out of the United States via
entities such as offshore trusts and then to repatriate such funds back into the United
States so as to make the proceeds appear to be from legitimate sources."  *United
States v. Castellini*, 392 F.3d 35, 43 (1st Cir. 2004).

1995, 1996, 1997, and 1998.  This investigation was reversed[2].  On December 11,

2003, the IRS began examining Defendant's files again for suspected underreporting for

tax years 1996-2002.  IRS agent Carl Selz ("Agent Selz") was assigned to Defendant's

case for a civil investigation.  Agent Selz was aware of the IRS's previous criminal

referral.  During his investigation, Agent Selz's developed a case history report which

notes, *inter alia*, that: 1) Defendant's case is a part of the Anderson Ark Project; 2)

Defendant's accountant, who worked for Anderson Ark, prepared his 2002 tax returns;

3) two of Defendant's businesses are the likely conduit for funds sent offshore; 4)

Defendant's professional corporation was a 43.55% general partner in a shell

partnership that was a part of the Anderson Ark scheme; 5) Defendant held investments

in offshore accounts that are not reported on this tax returns; and 6) Defendant failed to

file foreign information returns.

In connection with the summons, Defendant made a Freedom of Information Act

("FIOA") request to the IRS.  The IRS sent Plaintiff 86 pages but withheld 313 full pages

and 59 partial pages.  The IRS cited several FIOA exemptions for the non-disclosure,

including FIOA exemption (b)(7), which permits an agency to withhold investigatory

records compiled for law enforcement purposes.  Defendant says that the IRS's refusal

to provide documents, coupled with Agent Selz's notes, clearly indicates that the IRS is

investigating him for criminal tax fraud.

---

[2]A sworn affidavit by Victoria Osborne, a forensic accountant who reviewed
Defendant's tax files, attests that on June 10, 1998 a code 914 appears upon
Defendant's Individual Master File.  Code 914 identifies a tax module assigned to
Criminal Investigation Division as an active criminal investigation and freezes all
transactions in order to prevent th entity or tax module from being removed from the
Master File as an expired account.

III.    **ANALYSIS**

The United States is entitled to enforce Internal Revenue summons if it makes a *prima facie* case showing that enforcement is proper and the taxpayer does not show that the United States acted in bad faith.  This Court determined after a show cause hearing that Defendant did not meet his burden to demonstrate that enforcement of the summonses would be an abuse of the court's process.

Defendant argues that the summons should not have been granted because: (1) the IRS's failure to abandon its alleged civil investigation and make a criminal referral is a violation of the Internal Revenue Manual; (2) IRS regulations explicitly prohibit a revenue agent from developing a criminal case against a taxpayer under the guise of a civil investigation; and (3) enforcement of the summons violates Defendant's Fourth and Fifth Amendment rights.

The Government asserts that Defendant misconstrues the matter before the Court.  It argues that the only issue is whether the IRS is entitled to enforcement of the summonses under the standards articulated by the Supreme Court in *United States v. Powell*, 379 U.S. 48 (1964).  In the Government's view, Defendant's arguments pertain to whether the evidence should be admitted or suppressed in a criminal trial.

A.    *Enforcement of Summons*

The IRS may issue summons for the purpose of investigating "any offense" relating to the tax code.  26 U.S.C. § 7602; *United States v. Arthur Young & Co.*, 465 U.S. 805 (U.S. 1984)("In order to encourage effective tax investigations, Congress has endowed the Internal Revenue Service with expansive information-gathering authority;

4

26 U.S.C.S. § 7602 is the centerpiece of that congressional design.").  This authority is extinguished only when the investigation is referred to the Department of Justice.  *See* 26 U.S.C. § 7602(d)(1) ("No summons may be issued under this title . . . with respect to any person if a Justice Department referral is in effect with respect to such person."); *see also Scotty's Contracting and Stone, Inc. v. United States of America*, 326 F.3d 785, 788 (6th Cir. 2003).  The IRS may use the summons process to investigate possible civil and criminal conduct so long as the IRS issues summons before it recommends criminal prosecution to the Justice Department and acts in a good faith pursuit of civil tax liability.[3]  *Scotty's Contracting and Stone, Inc.*, 326 F.3d at 788 (holding that "the plain language of § 7602, as amended in 1982, makes clear that the IRS has the authority to issue summonses for the purpose of investigating 'any offense' relating to the tax code so long as the investigation has not been referred to the Department of Justice.").

To enforce a tax summons, the IRS must show that it has complied with four requirements: (1) the investigation has a proper purpose; (2) the information sought may be relevant to that purpose; (3) the IRS does not already have the information; and (4) the IRS has followed the statutory requirements for issuing a summons.  *United States v. Powell*, 379 U.S. 48 (1964).  "These requirements impose only a minimal burden" on the IRS.  *Muratore v. Dept. of Treasury*, 315 F.Supp.2d 305, 307 (W.D.NY. 2004).  The taxpayer, however, faces an "extraordinarily heavy burden" to either present

---

[3]The Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA") amended 26 U.S.C.§ 7602 allowing the summons power to be used to include civil as well as criminal investigations.  The TEFRA also drew a "bright-line" delineating that the summons power ends at the point the investigation is referred to the Department of Justice.

facts to disprove one of the *Powell* factors, or to show that the IRS issued the summons in bad faith. *Id.* at 308. The IRS acts in bad faith if the purpose of the investigation is to obtain evidence solely for the use in a criminal investigation. *Pickel v. United States*, 746 F.2d 176 (3d Cir. 1984) (stating that a taxpayer can prevent enforcement by showing that the IRS's purpose in issuing the summons was solely to harass him, to force him to settle a collateral dispute, or to gather information for other departments such as the Department of Justice). Nevertheless, "even if the primary purpose of the investigation is criminal, an IRS summons will be enforced if there is also the legitimate purpose of establishing civil tax liability." *United States v. Zack*, 521 F.2d 1366, 1367 (9th Cir. 1975).

Defendant does not contend that the summons were issued to obtain irrelevant or unnecessary information, or that issuance of the summons somehow violated the process prescribed in the Internal Revenue Code. Instead, he argues that the IRS has improperly delayed referral of his case to its criminal division or the Department of Justice despite "firm indications of fraud." In essence, Defendant asserts that the IRS is proceeding against him in bad faith.

In support of his contentions, Defendant argues that the IRS's noncompliance with its internal procedures is indicative of the agency's improper purpose. Section 4565.21 of the Internal Revenue Manual ("Manual") requires revenue agents to suspend their civil audits when they discover "a firm indication of fraud" and to refer such cases to the criminal investigation division.[4] *See Internal Revenue Manual* § 4565.21(1).

_____

[4]In *United States v. McKee*, the Sixth Circuit provided background to

6

Defendant argues that Agent Selz's case history notes demonstrate that the IRS is aware of "firm indications" of fraud and the potential for a criminal prosecution. Therefore, he contends that the IRS's failure to comply with the Manual and make a criminal referral demonstrates that the IRS is mounting a criminal investigation under the guise of civil audit. Defendant's arguments, however, are unavailing.

The Supreme Court stated that a federal court may enforce provisions of the Manual when "compliance with the [provision] is mandated by the Constitution or federal law." *United States v. Caceres*, 440 U.S. 741, 749 (1979). This Circuit holds that compliance with the Manual, specifically § 4565.21, is mandated by the Constitution. *United States v. McKee*, 192 F.3d at 542. In *McKee*, the Sixth Circuit reasoned that suspending a civil investigation once a revenue agent has a "firm indication of fraud," is

---

the structure of IRS tax investigations. 192 F.3d 535 (6th Cir. 1999).

> The IRS splits the responsibility for enforcing the nation's tax laws between its two investigative divisions. The Criminal Investigative Division ("CID") is charged with investigating criminal violations of the tax code and related federal statutes. CID investigators are called "special agents." Like many other criminal law enforcement agents, they carry firearms and badges. In addition, special agents must recite an administrative warning prior to soliciting information from taxpayers. On the other hand, the Examination Division of the IRS is responsible for conducting civil tax audits. Examination Division investigators are known as "revenue agents." In contrast to special agents, revenue agents do not carry firearms; nor are they required to provide taxpayers with an administrative warning. Although an Examination Division audit typically concludes with some sort of civil settlement between the IRS and the taxpayer, such an audit may uncover evidence that causes the revenue agent to refer the case to the CID for criminal investigation. Under IRS regulations, a revenue agent who uncovers a "firm indication of fraud on the part of the taxpayer" must immediately suspend her audit and refer the case to the CID. At that point, the CID enters the case and the IRS's efforts become focused on the possibility of criminal [prosecution].

*Id.* at 537-538 (internal citations omitted).

7

a rule designed to protect the taxpayer's Fourth and Fifth Amendment Constitutional rights. *Id.* Otherwise, the Court warns that "if the revenue agent continues the civil audit even after she has developed "firm indications of fraud," then she is, in fact, making affirmative misrepresentations to the constitutional detriment of the taxpayer because she is gathering criminal evidence against the taxpayer under the guise of a civil proceeding." *Id.* at 543, fn 5. Defendant relies on *McKee* in asserting that the IRS should cease its civil investigation and refer his case to the criminal division.

However, the Sixth Circuit in *Mckee* was not presented with the same issue. There the defendant appealed a tax fraud conviction and the district court's denied a motion to suppress the evidence. The Sixth Circuit held that affirmative misrepresentations by an IRS agent that the investigation is routine when in fact it is a criminal investigation requires suppression of the evidence. *Id.* (citing *United States v. Nuth*, 605 F.2d 229, 234 (6th Cir. 1979)). Defendant points to other criminal cases in which Courts hold that when a revenue agent has a firm indication of fraud the investigation must cease pursuant to the Manual. *See United States v. Peters,* 153 F.3d 445, 447 (7th Cir. 1998); *United States v. Foster*, No. 01-80264, 2002 WL 1480809, *5 (E.D.Mich. 2002)(stating that the evidence will be suppressed only upon a clear showing that the taxpayer was tricked or deceived). These cases, however, are inapposite because the Courts were deciding whether the evidence should be suppressed and not if the summons should be enforced.

Here, the summonses should be enforced absent a showing that the IRS is merely operating under the guise of a civil investigation. The fact that the IRS has not made a criminal referral is not *prima facie* evidence of "bad faith." The decision of to

8

refer a case for criminal investigation is within the sound discretion of the IRS agents.

Courts recognize that the revenue agent and his supervisors should be given latitude in

making the difficult referral decision.  *Groder v. United States*, 816 F.2d 139, 142-143

(4th Cir. 1987); *see also United States v. McKee*, 192 F.3d 535, 544 (6th Cir. 1999)("as

nearly every court addressing these very issues has observed, courts must defer to the

discretion of revenue agents as to whether an initiation of a criminal investigation is

warranted.").  The Sixth Circuit points out that agents are given such latitude for the

benefit of the taxpayer because "a major function of a civil audit is to allow the taxpayer

a chance to explain the discrepancies in his tax reports."  *Id.*  Ironically, Defendant

requests the exact opposite.

Although Agent Selz's notes indicate possible wrongdoing, section 4565.21

instructs agents to abandon their investigations when they detect a "firm indication of

fraud."  "A firm indication is something different from a 'first' indication or a mere

suspicion that intentional fraud exists."  *United States v. Groder*, 816 F.2d 139, 144 (4th

Cir. 1987); *see also United States v. Norwood*, 420 F.3d 888, 894 (8th Cir. 2005) (citing

the Manual stating that firm indications are present where the IRS discovers affirmative

acts of fraud and an intent to defraud).  In *Groder*, the Fourth Circuit aptly noted that "[i]f

a firm indication is taken to mean the same thing as a mere suspicion, taxpayers would

be subject to fraud investigations as a matter of course, and 'the revenue agent would

have to cease almost before he started his investigation."  *Id.*  Indeed, the Court

speculates this is the consequence Defendant seeks.

Further, the Court rejects Defendant's arguments that there are "firm indications"

of fraud which indicate that the IRS is developing a criminal case in violation of his

9

Fourth Amendment Rights. As stated above, gathering criminal evidence against a taxpayer under the guise of a civil proceeding is prohibited. *United States v. McKee*, 192 F.3d 535 (6th Cir. 1999). Several courts have relied on the "firm indications of fraud" rule as an benchmark to determine whether the IRS attempted to conduct a criminal investigation under the guise of a civil examination. *See United States v. Peters*, 153 F.3d at 452.

However, the fact that the summons may have a dual purpose, or that the civil investigation may produce evidence that subsequently may be used in a criminal prosecution, is not a basis to object to enforcement of the summons. *United States v. Theodore,* 479 F.2d 749, *753 (4th Cir. 1973); *see also Ryerson v. Internal Revenue Service*, 371 F.Supp.2d 1130, 1134 (S.D.Ariz. 2005)( stating that an investigation, with the potential for a recommendation of criminal prosecution, is not sufficient to establish bad faith).

In *Donaldson v. United States*, 400 U.S. 517 (1971), the Supreme Court upheld the issuance of a summons; confirming that the potential for a criminal prosecution did not preclude the summons from being enforced because there was a clear, civil purpose for the summons. Since *Powell*, courts continue to hold that the "criminal and civil aspects of an investigation diverge only when the IRS recommends a case to the Department of Justice for a criminal prosecution. *See United States v. Hayden*, 358 F.Supp.2d 951 (S.D.Cal. 2004)(holding that an IRS summons was issued for the legitimate purpose of establishing civil tax liability where there was no Department of Justice referral or evidence of bad faith). It is undisputed that, here, there is no referral to the Justice Department.

In a similar case, the Fourth Circuit found that there was "no evidence of bad faith or intent to deceive on the part of the [IRS] agent or her supervisors" where the agent delayed a criminal referral until after she met with the taxpayer. *Grode v. United States*, 816 F.2d at 145. The Fourth Circuit noted:

> Honest differences of opinion over the timing of referral simply cannot afford the basis for judicial intervention into the normal tax enforcement procedures of the Service. If that were so, the timing of every referral would become a matter of potential litigation and federal judges would be tempted to supplant the hard judgment calls of revenue agents in the field with their own notions of how tax laws should be enforced.

*Id.*

These same concerns compel this Court to reject Defendant's request that the summonses not be enforced. Defendant fails to prove that the IRS is delaying its referral in order to unlawfully gather facts to bolster a possible criminal case. Other than by conjecture, there is no evidence that the IRS is abusing or intends to abuse its investigative powers. Despite Defendant's contentions, the IRS is entitled to the opportunity to develop its case in sufficient detail so that it can determine whether a criminal investigation is warranted. The IRS is not precluded from gathering facts and seeking explanations in Defendant's case simply because Anderson Ark conspirators have been convicted or investigated for criminal tax fraud. *See United States v. Morgan*, 761 F.2d 1099, 1010 (4th Cir. 1985)(revenue agent continued his investigation for five months, referring only after asking taxpayer and his attorney for explanation); *United States v. Katz*, 705 F.2d 1237 (10th Cir. 1983)(revenue agent interviewed taxpayers and their accountant on a number of occasions before referral). While there is a possibility that criminal prosecution against Plaintiff might be conducted in the future, the IRS investigation has not reached the point where it can be deemed "solely

11

criminal." *Theodore*, 479 F.2d at 749.  Many courts have emphasized that "determining the presence of tax fraud can be an intricate process."  *Groder,* 816 F.2d at 143. Consequently, this Court will not second-guess the IRS's judgment.  *See United States v. Matis*, 476 F.Supp. 1287, 1292-93 (S.D.N.Y. 1979)("Second-guessing a Revenue agent's judgment should not become a routine chore for judges . . ..").  Therefore, the Court directs enforcement of the summonses.

       B.    *Fifth Amendment Claims*

     Defendant argues that his Fifth Amendment privilege against self-incrimination would be violated by enforcement of the IRS summonses.  The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal cases to be a witness against himself."  U.S. CONST. AMEND. V.

     But, Defendant's assertion that the IRS's failure to abandon the civil investigation at this time violates his Fifth Amendment rights is incorrect.  The summons were issued to Defendant as an agent or officer of Petitum and AndArk.  Therefore, he has no right against self-incrimination with respect to the production of *their* documents.  *See Braswell v. United States*, 487 U.S. 99 (1988).  In *Braswell*, the Supreme Court stated there is a clear distinction between an individual and a corporation.  *Id.*  The Court held that individuals possessing official records and documents of an organization hold them in a representative rather than in a personal capacity.  Therefore, they cannot invoke the personal privilege against self-incrimination, even though production of the papers might tend to incriminate them personally.  *Id.*  Nor could Defendant invoke the privilege on behalf of the corporation, since the privilege against self-incrimination is a personal, not a corporate right.  *See United States v. Van*, 931 F.2d 384, 389 (6th Cir. 1991)(citing

*In re Grand Jury Proceedings* (Morganstern), 771 F.2d 143 (6th Cir. 1990) (en banc).

Finally, Defendant argues that the IRS summonses improperly request documents concerning him and his spouse.  He maintains that these requests have nothing to do with the entities he represents and the IRS only seeks to trick him into incriminating himself.[5]  The Court notes that enforcement of the summonses do not preclude Defendant from asserting the Fifth Amendment during the investigation. *United States v. Arthur Young & Co.*, 465 U.S. 805, 814 (1984)(noting that § 7602 is subject to traditional privileges and limitations.  However, any other restriction upon the IRS summons power should be avoided absent unambiguous directions from Congress).  Thus, the summonses will be summarily enforced.


**IV.    CONCLUSION**

For the foregoing reasons, the Court **DENIES** Defendant's Motion for Reconsideration.

**IT IS ORDERED.**


                                        S/Victoria A. Roberts
                                        Victoria A. Roberts
                                        United States District Judge

Dated:  February 26, 2007

---

[5]The document request states in pertinent part:
"Provide detailed descriptions and documentation for any foreign assets in which you, and your spouse have or had any ownership or beneficial interest. This information should include any foreign entities that you and your spouse have a right to exercise dominion or control."

13

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on February 26, 2007.

S/Linda Vertriest
Deputy Clerk